IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

               Plaintiff,

    v.                                                             OPINION and ORDER

ANESSA RENEE FIERRO and                                      20-cr-134-jdp
WILLIE TREMAINE JOHNSON,

               Defendants.

---

      Defendants Anessa Renee Fierro and Willie Tremaine Johnson are indicted on two counts of arson under federal law. Dkt. 37. Defendants move to dismiss the indictment, contending that the federal arson statute, 18 U.S.C. § 844(i), is unconstitutional because Congress exceeded its authority under the Commerce Clause in enacting it. Dkt. 65 and Dkt. 67.[1] Defendants entered conditional plea agreements, reserving their right to press their constitutional challenge. *See* Dkt. 73 and Dkt. 74.

      The case arises from events that occurred in Madison during the civil unrest following the shooting of Jacob Blake in Kenosha. Count 1 of the indictment charges that on or about August 25, 2020, defendants "maliciously attempted to damage and destroy, by means of fire, BUSINESS A, a commercial building in Madison, Wisconsin, which was used in interstate and foreign commerce." Dkt. 37, at 1. Count 2 charges the same conduct directed at a second victim, BUSINESS B. *Id.* The government reports that Business A is an office complex used by

---

[1] Defendant Fierro filed the initial brief in support, Dkt. 66, which Johnson joined, Dkt. 67. The defendants filed a joint reply, Dkt. 72, to the government's response in opposition, Dkt. 70.

multiple organizations; Business B is a mixed-use rental property with apartments on the upper floors and retail space at street level. Dkt. 70, at 1.

The challenged statute, 18 U.S.C. § 844(i), states:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both . . . .

The comparable state crime, Wis. Stat. § 943.02, has no mandatory minimum, but it provides for a maximum 40-year prison term.

Defendants contend that because arson is "a paradigmatic common law state crime," § 844(i) violates the Tenth Amendment. Although Congress "attempted to give § 844(i) the veneer of constitutionality" by "paying lip service to the Commerce Clause," the Supreme Court's Commerce Clause rulings in *Lopez, Morrison*, and *Raich* demonstrate "that § 844(i) is not a valid exercise of Congress's power to regulate interstate and foreign commerce."[2] Because Congress did not have the authority to enact the statute in the first place, defendants contend that it is facially invalid and cannot be the basis for prosecuting them. Dkt. 65, at 2–3. The government disagrees, contending that § 844(i) is a valid exercise of Congress's power under the Commerce Clause that passes muster under the tests applied by the Supreme Court; as a result, the statute does not run afoul of the Tenth Amendment. Dkt. 70. Critical to the

---

[2] *United States v. Lopez*, 514 U.S. 549 (1995); *United States v. Morrison*, 529 U.S. 598 (2000); *Gonzalez v. Raich*, 545 U.S. 1 (2005).

government's position is the express requirement in § 844(i) that the targeted property be used in interstate commerce or in an activity affecting interstate commerce.

Defendants ground their argument in high-level principles of Commerce Clause jurisprudence, but they find scant support in cases dealing specifically with § 844(i). The weight of authority is stacked against them. Thirty-six years ago, in *Russell v. United States*, 471 U.S. 858 (1985), the Court upheld a conviction under § 844(i) for the attempted arson of an apartment building. The defendant in *Russell* contended that the statute could not be applied to an apartment building that was not otherwise commercial or business property. The Court held that the legislative history showed Congress's intent to exercise its full power to protect business property; by its terms, the statute applies only to property that is used in an activity that affects commerce. *Id.* at 860–62. Although the precise issue was framed as a matter of statutory interpretation, the Court expressed its view that Congress had the authority to enact the statute: "The congressional power to regulate the class of activities that constitute the rental market for real estate includes the power to regulate individual activity within that class." *Id.* at 862. *Russell* has never been overruled.

Fifteen years later, in *Jones v. United States*, 529 U.S. 848 (2000), the Court clarified that only property "used" in an activity that affected interstate commerce properly fell within the ambit of § 844(i). Therefore, § 844(i) could not be used to prosecute the arson of an owner-occupied private residence. *Id.* at 856–57. Limiting the reach of the statute in this fashion avoided the constitutional concerns brought to the fore in *Lopez*. *Id.* at 858. In joining the Court's opinion, Justices Thomas and Scalia expressed no view as to whether § 844(i), as the Court had construed it, was constitutional in its application to all buildings used for commercial

activities. Despite Thomas and Scalia's stated reservation, it's hard to read *Jones* and conclude that the Court harbored doubts about Congress's authority to enact § 844(i).

In 2017, the Court of Appeals for the Third Circuit observed in an unpublished opinion that in the 17 years since the Supreme Court had decided *Morrison* and *Jones*, not one court had held that *Russell* was no longer controlling precedent. *United States v. Forsythe*, 711 F. App'x 674, 679 n.5 (3rd Cir. 2017).[3] This observation remains accurate in 2021: every court that has considered the constitutionality of § 844(i) has concluded that the statute is a valid exercise of Congress's authority under the Commerce Clause. *See United States v. Mahon,* 804 F.3d 946, 953–54 (9th Cir. 2015) (rejecting facial challenge to § 844(i) under *Lopez* and *Morrison* because the statute has the necessary jurisdictional element); *United States v. Garcia*, 768 F.3d 822, 829–30 (9th Cir. 2014) (*Russell* still good law after *Morrison* because § 844(i) possesses the requisite jurisdictional element); *United States v. Laton*, 352 F.3d 286, 297 (6th Cir. 2003) (§ 844(i) remains valid after *Lopez*; Congress's inclusion of a jurisdictional element appropriately limits its reach); *United States v. Tocco*, 135 F.3d 116, 123 (2d Cir. 1998) ("We hold that in light of the fact that, unlike the statute in *Lopez*, § 844(i) *does* contain a

---

[3] The court further held that even if Forsythe *were* correct that *Lopez, Morrison*, and *Jones* undermined *Russell,* the Third Circuit, as an appellate court, was bound to follow the Supreme Court's decision in *Russell*. 711 F. App'x at 678. That seems to be the Seventh Circuit's general position as well. *See United States v. Faulkner*, 793 F.3d 752, 756 (7th Cir. 2015) ("Faulkner argues that [*Witte v. United States*, 515 U.S. 389 (1995)] should not control here, but he has not explained why we, a lower court, are authorized to disregard binding precedent from the Supreme Court."); *United States v. Schellong*, 717 F.2d 329, 336 (7th Cir. 1983) ("We remain bound by the Supreme Court's holding in *Luria v. United States*, 231 U.S. 9 [1913]."); *United States v. Mitchell*, 299 F.3d 632, 635 (7th Cir. 2002) ("Until the Supreme Court overrules [*United States v. Bass*, 404 U.S. 336 (1971)], we will continue to adhere to our view that section 922(g) was a valid exercise of Congressional power under the commerce Clause.").

4

jurisdictional element, *Lopez* did not elevate the government's burden in establishing jurisdiction in a federal arson prosecution." (emphasis in original)); *United States v. Craft*, 484 F.3d 922, 927–29 (7th Cir. 2007) (pursuant to *Russell* and *Jones,* government could charge defendant under § 844(i) for arson to empty rental properties, but not for arson to a Hell's Angels clubhouse; no mention of *Morrison* or *Lopez*); *United States v. Rea*, 300 F.3d 952, 963 (8th Cir. 2002) ("We do not find *Lopez*'s analysis applicable due to . . . § 844(i)'s express jurisdictional element.") (quoting *United States v. Melina*, 101 F.3d 567, 573 (8th Cir. 1996)); *United States v. Hicks*, 106 F.3d 187, 188–89 (7th Cir. 1997) (in post-*Russell*, pre-*Jones* case, court rejects defendant's *Lopez*-based challenge to § 844(i)); *United States v. Sherlin*, 67 F.3d 1208, 1213 (6th Cir. 1995) ("Unlike the unconstitutional statute in *Lopez,* 18 U.S.C. § 844(i) does contain a jurisdictional element, which insures, through proper inquiry, that the arson in question affects interstate commerce. . . . Thus, *Lopez* is distinguished from the present case, and we find that Congress did not exceed its authority under the Commerce Clause when it enacted 18 U.S.C. § 844(i).").

To the same effect, cases that have tangentially addressed § 844(i)'s nexus to the Commerce Clause have found the statute unobjectionable. *Cf. Torres v. Lynch*, 136 S. Ct. 1619, 1634 (2016) (in INA case considering whether a state arson conviction qualified as an "aggravated felony," Court compares § 844(i)'s elements to New York's state arson law, noting without concern that the only difference is the federal statute's interstate commerce element of the standard, jurisdictional kind); *cf. id.* at 1641 (Sotomayor, J., dissenting) (deeming § 844(i)'s interstate commerce requirement "far from . . . token" because it "serve[s] to narrow the kinds of crimes that can be prosecuted, not just to specify the sovereign who can do the

prosecuting"); *cf. United States v. Hill*, 927 F.3d 188, 205–06 (4th Cir. 2019) (stating in dicta that federal arson statute complies with Commerce Clause because it contains a jurisdictional element that limits its reach to arsons that interfere with interstate commerce); *United States v. Patton*, 451 F.3d 615, 632–33 (10th Cir. 2006) (noting in dicta that *Jones* Court found that § 844(i)'s "jurisdictional hook served the purpose of limiting the statute to arson cases where there really was a substantial and non-attenuated effect on interstate commerce"); *cf. United States v. McFarland*, 311 F.3d 376, 421–22 (5th Cir. 2002) (per curiam) (Jones, J., dissenting) (stating in dicta in Hobbs Act case that Supreme Court got it right in *Jones* with § 844(i)'s jurisdictional hook: the statute does not reach purely local conduct).[4]

According to defendants, all of these courts got it wrong: application of the requirements of *Lopez*, *Morrison*, and *Raich* "yields a clear answer: Section 844(i) is not authorized by the Commerce Clause and violates the Tenth Amendment." Dkt. 66, at 9. I am not persuaded.

The Commerce Clause empowers Congress to regulate (1) the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) those activities that substantially affect interstate commerce. *Lopez*, 514 U.S. at 558–59. The parties agree that § 844(i) fits, if at all, into the third category, activities that substantially affect interstate commerce.

---

[4] Defendants cite Justice Breyer's dissent in *Lopez* as a backhanded acknowledgment that § 844(i) no longer passed muster after *Lopez*. Dkt. 66, at 5 (citing *Lopez*, 514 U.S. at 630 (Breyer, J., dissenting)). But Justice Breyer did not express a firm view that § 844(i) would no longer pass constitutional muster; he raised the rhetorical question about the effect of *Lopez* on other federal criminal statutes grounded in the effect on interstate commerce. As the Court later made clear in *Jones*, § 844(i) does not run afoul of *Lopez* because the statute "covers only property currently used in commerce or in an activity affecting commerce." 529 U.S. at 858.

In *Morrison*, the Court set forth four "significant considerations" relevant to the court's determination whether a statute falls within the substantial effects category. 529 U.S. at 609. First, the court must consider whether the statute regulates a commercial activity. "Where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained." *Id.* at 610, quoting *Lopez*, 514 U.S. at 560. "*Lopez* did not alter [the Court's] practical conception of commercial regulation . . . [and] Congress may regulate in the commercial sphere on the assumption that we have a single market and a unified purpose to build a stable national economy." *Id.* at 611 (internal quotation marks omitted).

Defendants contend that § 844(i) does not regulate an economic activity: "It regulates setting fire to property. Setting fire to property is not an economic activity." Dkt. 66, at 13. Defendants are correct that, unlike robbery or extortion, the act of setting a fire is not inherently an economic activity. But arson is typically economically motivated, and setting fire to property actively employed for commercial purposes is inherently an economic activity in the sense that it directly affects economic transactions. This is what § 844(i) requires for federal jurisdiction to vest. *Jones*, 529 U.S. at 855. "The *Russell* opinion went on to observe . . . that [b]y its terms, § 844(i) applies only to property that is used in an activity that affects commerce." *Id.* at 856 (internal quotation marks omitted). "We conclude that § 844(i) is not soundly read to make virtually every arson in the country a federal offense. We hold that the provision covers only property currently used in commerce or in an activity affecting commerce." *Id.* at 859.

The second consideration from *Morrison* is whether the statute contains an express jurisdictional element that might limit its reach to a discrete set of acts that additionally have

an explicit connection with or an effect on interstate commerce. "Such a jurisdictional element may establish that the enactment is in pursuance of Congress's regulation of interstate commerce." *Morrison*, 529 U.S. at 611–12. As noted above, all of the courts that have considered this issue have concluded that § 844(i) contains an adequate jurisdictional hook. As Judge Posner noted in *Hicks*, "[T]he activity regulated by the arson statute is the burning of property used in or affecting commerce, and it doesn't take any fancy intellectual footwork to conclude that the aggregate effect of such arsons on commerce is substantial." 106 F.3d at 189. In short, § 844(i) regulates an economic activity as *Lopez* and *Morrison* use that term.

Defendants contend that the jurisdictional element in § 844(i) is deficient. In making this argument, defendants marginalize the Court's holding in *Jones* that the jurisdictional language in § 844(i) limits the statute to arsons within Congress's power under the Commerce Clause. According to defendants, "[T]he Court didn't decide what sorts of property could be covered by the text of § 844(i) or whether § 844(i) was constitutional; it held only that the arson of a privately owned house at issue in *Jones* could not be prosecuted under § 844(i)." Dkt. 66, at 31. In other words, the Court held that the arson of a privately owned house was beyond the reach of the statute, but it did not hold that the arson of a commercial building was within it. Defendants find a hint of support for their argument in the concurrence of Justice Thomas, joined by Justice Scalia; these justices expressed no view on whether the statute was constitutional in its application to all buildings used for commercial purposes. *Jones*, 529 U.S. at 860 (Thomas, J., concurring). But I read the opinion in *Jones* more broadly than defendants do, as do all of the courts in the cases cited above. It's hard to see how, in light of the majority opinion in *Jones*, I could conclude that the jurisdictional hook in § 844(i) is deficient.

*Morrison*'s third factor directs a court to consider whether the statute or its legislative history contains express congressional findings regarding the effects of the activity on interstate commerce. "While Congress normally is not required to make formal findings as to the substantial burdens that an activity has on interstate commerce, the existence of such findings may enable us to evaluate the legislative judgment that the activity in question substantially affects interstate commerce, even though no such substantial effect is visible to the naked eye." *Morrison*, 529 U.S. at 612 (internal quotation marks omitted).

The legislative history of § 844(i) teems with pronouncements helpful to both sides, illustrating Judge Leventhal's observation that the use of legislative history is like entering a crowded cocktail party and looking over the heads of the guests for one's friends. *See Convoy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring.) But in this case, I don't have to decide which side's "friends" are more articulate and more persuasive. Justice Stevens did that in *Russell*, 471 U.S. at 860–62. His review of the legislative history of § 844(i) led the Court to conclude that the statute was an appropriate exercise of Congress's power under the Commerce Clause. *Id.* at 862. Defendants' arguments to the contrary have not persuaded me that the *Russell* Court was incorrect.

Finally, *Morrison's* fourth consideration is whether the link between the activity and a substantial effect on interstate commerce is attenuated. *Morrison*, 529 U.S. at 612. Defendants observe that when the Court struck down part of the Violence Against Women Act in *Morrison*, it found that the link between gender-motivated violence and interstate commerce was too weak to allow Congress to regulate such violence at the federal level. Dkt. 66, at 21–22. From this, defendants argue:

> If criminal acts against women—who make up half the population and regularly travel between the states, work in interstate businesses, and buy and sell goods and services on the interstate market—do not have a sufficient link to substantial effects on interstate commerce, then criminal acts against real and personal property cannot meet the mark. Women collectively affect interstate commerce at least as much as buildings and other types of property do. Yet *Morrison* held that Congress could not enact legislation aimed at deterring violence against women. Therefore, Congress cannot enact legislation aimed at deterring arson of property. To hold that § 844(i) shares a sufficient link to interstate commerce would be to hold that property matters more to the national economy than women do.

Dkt. 66, at 22 (footnotes omitted).

I appreciate the rhetorical flourish, but I don't find the argument persuasive. The root of the constitutional problem identified in *Morrison* was not that women are less significant than property to the national economy. The problem was actually the opposite: the aggregate effect of crimes against women is enormous, but if the aggregate effect alone justified federal regulation, then there would be no "distinction between what is truly national and what is truly local." 529 U.S. at 617–18. With no federal jurisdictional hook, the challenged section of the Violence Against Women Act was aimed at the general suppression of violent crime. And however widespread and grave the consequences of violent crime, its general suppression lies outside Congress's Commerce Clause authority.

Following the four-part *Morrison* framework, § 844(i) does not suffer from the constitutional defects of the Gun-Free School Zones Act or the Violence Against Women Act. Arson is typically, though not inevitably, an economic crime. Section 844(i) has an explicit jurisdictional hook on which the *Jones* Court relied to narrow the statute's reach to arsons that actually affect interstate commerce. Section 844(i) has a legislative history that the *Russell*

Court found adequate to support the statute's application to arsons that affected interstate commerce. And the link between the conduct prohibited by § 844(i) and interstate commerce is not attenuated, because it is not based merely on the aggregate effect of non-economic violent crime.

Congress's authority under the Commerce Clause is not unlimited, but it is capacious. In light of the Supreme Court's holdings in *Russell* and *Jones*, and the many cases applying them, it's hard to conclude that the federal arson statute is one of the rare instances where Congress has overstepped its authority. I conclude that Congress acted within its authority in enacting § 844(i), and thus it does not violate the Tenth Amendment. Defendants' motions to dismiss are denied.

ORDER

IT IS ORDERED that defendants' motions to dismiss, Dkt. 65 and Dkt. 67, are DENIED.

Entered June 15, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge